FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JAN 10 PM 3:48

U.S. DISTRICT COURT
N.D. OF ALABAMA

**HENRY GOODGAME and JAMES BROWN,**

    Plaintiff(s),

vs.

**AMERICAN CAST IRON PIPE COMPANY,**

    Defendant(s).

CV-91-N-0185-S

**ENTERED**

JAN 10 1997

### Memorandum of Opinion

**I.    Introduction.**

The matter is before the court on defendant's motion filed on August 28, 1996, for summary judgment on all the plaintiffs' remaining claims. The motion has been fully briefed and is ripe for decision. Upon due consideration, the motion will be granted as to the claims of plaintiff James Brown and denied as to the claims of plaintiff Henry Goodgame.

**II.   Procedural History.**

This action originally was filed in January of 1991 by plaintiff Goodgame. In February of that same year, a consolidated complaint, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, was filed, adding plaintiff Brown. The plaintiffs claimed that the defendant, American Cast Iron Pipe Company ("ACIPCO"), denied them promotions based on their race. The case was tried to a jury in April 1992. At trial, the court, having previously ruled that provisions of the Civil Rights Act of 1991 were to be applied retroactively, instructed the jury regarding Title VII and section 1981 as

amended by the 1991 Act which passed during the pendency of the case.[1] The jury awarded Henry Goodgame nominal and punitive damages and James Brown back pay and punitive damages on April 16, 1992.[2] After the jury verdict but before the court entered final judgment, the Eleventh Circuit Court of Appeals held in *Curtis v. Metro Ambulance Serv., Inc.*, 982 F.2d 472, 473-74 (11th Cir. 1993), that the 1991 amendments do not apply to conduct that occurred before passage of the Act. Thereafter, the United States Supreme Court, in *Landgraf v. USI Film Products*, --- U.S. ----, ---- - ----, 114 S.Ct. 1483, 1505-08, 128 L.Ed.2d 229 (1994) and *Rivers v. Roadway Express, Inc.*, --- U.S. ----, ---- - ----, 114 S.Ct. 1510, 1519-20, 128 L.Ed.2d 274 (1994), ruled that the Act was not to be applied retroactively. Thereupon, the court vacated the award of punitive damages, set aside the jury verdict, and entered judgment for ACIPCO on all counts except Goodgame's Title VII claim. The court awarded Goodgame $1 in nominal damages on that count. The plaintiffs moved to alter, amend, or vacate the judgment and alternatively moved for a new trial. The court denied the motions, and the plaintiffs appealed.

On appeal, the Eleventh Circuit determined that because the jury was not instructed on and did not consider the issue of whether the promotions would have created a new and distinct relationship between the respective plaintiffs and ACIPCO, a new trial should have been granted the plaintiffs, and it remanded the matter for new trial on the plaintiffs' section

---

[1] The 1991 Act eliminated the requirement that, for there to be discrimination for failure to promote, the promotion must involve a new and distinct relationship between the employer and the employee. Consequently, the jury did not consider this issue when it rendered its verdict.

[2] The jury awarded Goodgame $1 in nominal damages and $250,000 in punitive damages. The verdict did not specify whether the award was made pursuant to Title VII or to section 1981. The jury awarded Brown back pay of $727.44 and $250,000 in punitive damages pursuant to section 1981.

1981 claims.[3] *See Goodgame v. American Cast Iron Pipe Co., Inc.*, 75 F.3d 1516, 1521-22 (11th Cir. 1995).

## III. Undisputed Facts.

The Monocast Department at ACIPCO produces iron pipe and is divided into three work units. Each unit is comprised of seven work stations: Central Lining, Casting, Unit 23, Cleaning Shed, Melting, Core Room, and Mold Room. Entry level positions in the Monocast Department are nonsupervisory. The lowest level of supervisory positions generally carry the title "Leadman," and the employees in this position are paid hourly wages. Some second and higher level supervisors are also paid hourly wages and hold the title "Leadman" or "Shift Foreman." Each of the three Monocast Department units has a salaried supervisor called a "Shop Foreman," who reports directly to the Monocast Department Assistant Superintendent, who in turn reports to the Department Superintendent. Both the Assistant Superintendent and Superintendent positions are salaried. The "line of progression,"[4] or the hierarchical reporting structure of the Monocast Department, begins with an hourly supervisory position with progression through higher paying salaried positions.[5]

---

[3] Following the appeal, each plaintiff was left with a single failure to promote claim under section 1981. Thus, the issues before the court are limited to the two section 1981 claims remanded by the Eleventh Circuit.

[4] "Line of progression" is the term the plaintiffs use to refer to the management structure of the Monocast Department.

[5] The line of progression in the Melting, Central Lining, Cleaning Shed, and Casting work stations begins at the lowest level with (1) Shop Preparation Leadman, followed by (2) Leadman, (3) Shift Foreman, (4) Shop Foreman, (5) Assistant Superintendent, and (6) Superintendent. The line of progression in the Core Room, Mold Shop, and Unit 23 is similar but does not include the first position of Shop Preparation Leadman.

3

Henry Goodgame worked for ACIPCO in the Monocast Department for approximately 38 years, retiring in 1992. In 1975, he received his first promotion from a nonsupervisory position to the first level supervisory position of Cleaning Shed Shift Foreman. He worked in that capacity or as a Lining Leadman, both hourly positions, throughout his tenure at ACIPCO.[6] In January of 1990, David Burnett, a white ACIPCO employee, was promoted from Shift Foreman, an hourly supervisory job, to Shop Foreman over Units 1 and 2 Cleaning Sheds, a salaried supervisory position. At that time, Goodgame held the Shift Foreman position at an hourly rate of $13.50. Between January 1990, the time of Mr. Burnett's promotion, and April 1992, the date of the plaintiff's retirement, Mr. Goodgame earned $90,045.36, while Mr. Burnett earned only $89,578.29, despite the different positions they occupied in the line of progression.[7]

The position of Shift Foreman formerly occupied by Goodgame is different from that of Shop Foreman, the position awarded to David Burnett. A Shop Foreman supervises more employees than does a Shift Foreman. He has greater responsibility for ensuring safety compliance, preparing reports and schedules, ordering materials, and budgeting, and he participates in management cost meetings while a Shift Foreman does not. Additionally, a Shop Foreman may park his car in a lot which is closer to the job, whereas a Shift Foreman does not have this privilege.

---

[6] Plaintiffs deny that these were Mr. Goodgame's only two positions from 1975 to 1992. They assert that he also held the position of Enameline Leadman, an hourly supervisory job, from April 26, 1976 to July 10, 1977. *See Opponent's Statement of Facts* at 12. While Plaintiffs' Trial Exhibit 3 does support the plaintiffs' statement, the matter is immaterial to the court's determination of the summary judgment motion.

[7] The undisputed evidence is that Mr. Goodgame was eligible for and received overtime pay and that Mr. Burnett did not.

James Brown has worked in ACIPCO's Monocast Department since 1969. He received his first promotion to the supervisory level in May of 1988, when he was named Shop Preparation Leadman, an hourly position. In December of 1989, Michael Short, a white ACIPCO employee, was promoted to Leadman Casting and received a wage of $12.27 per hour. At that time, Brown was earning $11.86 per hour as Shop Preparation Leadman. In September of 1990, Brown was himself promoted to Leadman Casting and received a raise to $12.64 per hour, and in January of 1995, Brown was again promoted to Shift Foreman.

The position of Shop Preparation Leadman held by Brown has different responsibilities than that of Casting Leadman, the position awarded to Michael Short. A Casting Leadman receives higher pay than a Shop Preparation Leadman. He is responsible for ensuring that the unit produces the proper style and size of pipe and for keeping production records, and he is charged with ensuring the pipes go through the annealing oven, located in a different unit of the shop. The Shop Preparation Leadman has none of these responsibilities. Further, the Casting Leadman substitutes for the Shift Foreman in the Foreman's absence, attending the foreman's meeting held by the Superintendent if necessary.[8]

All ACIPCO employees, regardless of position or pay rate, are insured under a single health insurance plan. Promotions do not affect coverage or benefits. Likewise, all ACIPCO employees are covered by the same pension plan regardless of position or pay

---

[8] The defendant asserts that a Shop Preparation Leadman may fill in for a Casting Leadman in the Leadman's absence. Plaintiffs admit this but state that it is not the normal practice and cite Brown's Deposition at page 24 as authority for their assertion.

rate. However, because pension benefits are calculated based on an employee's highest five years of earnings, those in higher paying positions generally have accumulated greater benefits. All ACIPCO employees are provided twelve thousand dollars ($12,000) of life insurance free of charge. Nonsupervisory, hourly paid employees may purchase at their expense an additional fifteen thousand dollars ($15,000) of coverage, while hourly supervisory employees may purchase the fifteen thousand dollars ($15,000) plus an additional four thousand dollars ($4,000) of coverage, making them eligible to buy an optional nineteen thousand dollars ($19,000) of additional life insurance. Once an employee attains a salaried supervisory position, he is eligible to purchase an additional six thousand dollars ($6,000) of coverage, for a total of twenty-five thousand dollars ($25,000) extra life insurance.

While Brown was employed as an hourly nonsupervisory employee, he opted to purchase the additional fifteen thousand dollars ($15,000) of coverage, and he purchased an additional four thousand dollars ($4,000) worth upon his promotion to an hourly supervisory position. If, in December of 1989, he had been promoted to the position of Casting Leadman rather than Mr. Short, he would not have been eligible to purchase additional life insurance because his present position, Shop Preparation Leadman, and the position of Casting Leadman are both hourly supervisory positions. Goodgame opted not to purchase any additional life insurance during his tenure at ACIPCO.

Hourly paid supervisors are not paid for their first three sick days, and after three days of absence, they receive 6 1/2 hours of pay for each day of absence due to illness. Salaried supervisors, on the other hand, receive their normal salary regardless of absences

6

due to illness. Hourly paid supervisors receive one and one-half times their regular hourly wage for all hours worked in excess of forty during any work week or eight in any work day. Salaried supervisors, however, are ineligible for overtime pay. They may nevertheless earn additional regular wages if they work an eight-hour shift on a weekend. At one point in Mr. Goodgame's career with ACIPCO, he turned down a promotion to a salaried supervisory position, citing as one of his reasons his loss of overtime pay.

**IV.    Summary Judgment Standard.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## V.     DISCUSSION.

### A.     Section 1981 Claims.

In its pre-1991 form, section 1981 prohibits racial discrimination in the making and enforcement of contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989). "[W]hether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. . . . Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* at 185.

In the case at bar, ACIPCO argues that section 1981 is inapplicable to the plaintiffs' claims, for neither promotion, if either had occurred, would have constituted a "new and distinct" employment contract between either plaintiff and the defendant. *Movant's Initial Submission* at 13. ACIPCO relies upon *Wall v. Trust Co. of Ga.*, 946 F.2d 805 (11th Cir. 1991), for support of its argument. In *Wall*, the Eleventh Circuit determined that a promotion from bank customer service representative to tax analyst did not implicate section 1981 because it did not rise above the "bright line of a relation sufficiently 'new and distinct' to qualify under the *Patterson* test." *Id.* at 808. In so holding, the court noted the fact that both positions were nonexempt salaried jobs, were relatively equal in job grade, offered identical benefits and compensation, and were covered by the same policies and procedures. *Id.* The court specifically considered that the promotion would not have elevated the plaintiff in that case to a management position. *Id.*

### 1.    **Henry Goodgame's Claim.**

Mr. Goodgame held the Shift Foreman position in the Cleaning Shed earning $13.50 per hour when David Burnett was promoted to Shop Foreman over Units 1 and 2 Cleaning Sheds. The Shift Foreman is an hourly paid supervisor, while the Shop Foreman is a salaried supervisor and is one promotional step above Shift Foreman in the line of progression. Both positions can be considered to be management roles in that they both involve the supervision of other employees, yet the Shop Foreman supervises more individuals than does the Shift Foreman and has greater general management responsibilities. The Shop Foreman also receives preferential parking privileges. Both positions receive the same health insurance and pension benefits and both are provided

10

with the same basic amount of life insurance. The Shop Foreman is eligible, however, to purchase six thousand dollars more in additional life insurance than is the Shift Foreman. Furthermore, the Shop Foreman receives full pay for any absences due to illness, whereas the Shift Foreman does not receive any pay for his first three sick days and only receives partial pay for any thereafter. The Shift Foreman, however, is eligible for overtime pay at one and one-half times his regular wage, while the Shop Foreman, as a salaried employee, is only eligible for weekend overtime pay at his regular wage.

Applying the factors used by the Eleventh Circuit in *Wall v. Trust Co. of Ga.*, the court cannot agree that there is no genuine issue of material fact as to whether a "new and distinct" employment contract would have been created had Goodgame been promoted to Shop Foreman rather than Mr. Burnett. While the two positions at issue in this case are only one step removed in the line of progression, offer identical basic employment benefits, and are covered by the same policies and procedures, they are not both salaried jobs as were those at issue in *Wall*. One is an hourly supervisory position, while the other is salaried. Further, the Shop Foreman is eligible for augmented life insurance benefits, albeit at his own expense, and preferential parking. A reasonable jury could thus return a verdict for Mr. Goodgame; therefore, the motion for summary judgment to the extent it seeks dismissal of Mr. Goodgame's claim will be denied.

### 2. **James Brown's Claim.**

Mr. Brown held the position of Shop Preparation Leadman in Casting when Michael Short was promoted to Leadman in the same unit. Both positions are hourly supervisory jobs, and in the instant case, Mr. Short earned 41 cents per hour more than did Mr. Brown.

11

Both receive identical employment benefits, overtime compensation, health and life insurance and pension plans. The job responsibilities are different, however, as the Leadman is charged with ensuring that the unit produces the proper pipe, completion of production records, and substitution for the Shift Foreman in the Foreman's absence.

Again applying the *Wall* factors as established by the Eleventh Circuit, it is clear that no new and distinct employment relationship would have been created between Brown and ACIPCO had Brown received the promotion to Leadman rather than Michael Short. Both are hourly supervisory positions, offer identical benefits, are only one step apart in the line of progression, and are covered by the same policies and procedures. Thus, the defendant's motion for summary judgment to the extent that it seeks dismissal of Mr. Brown's claim will be granted.

## VI. Conclusion.

Accordingly, the defendant's motion for summary judgment will be granted in part and denied in part. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _9th_ of January, 1997.

*[signature]*
Edwin L. Nelson
United States District Judge